IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ANGELA S. PROPST, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:12cv089 |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on May 10, 2013, in which it is recommended that plaintiff Angela Propst's ("Propst") motion for summary judgment be granted in part, that the Commissioner's motion for summary judgment be denied, and that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. The magistrate judge agrees with the position taken by Propst on appeal that the Administrative Law Judge ("ALJ") erred in his determination at step two of the sequential analysis that Propst's arm and shoulder impairments are not severe. Moreover, the magistrate judge reasons that such error is not harmless because the ALJ did not adequately consider the combined impact of Propst's impairments in determining her residual functional capacity later in the sequential analysis. The Commissioner has filed an objection to the Report and Recommendation pursuant to Federal Rule of Civil Procedure 72(b).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule Civil Procedure 25(d), Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant.

1

The court has reviewed the magistrate judge's report, the objections to the report, and the pertinent portions of the administrative record and, in so doing, made a de novo determination of those portions of the report to which the Commissioner objected. For the reasons set forth below, the magistrate judge's recommendation will be rejected in its entirety and the Commissioner's decision affirmed.

## I.

The Commissioner denied Propst's May 12, 2009 disability application initially on October 5, 2009, and again on reconsideration. An administrative hearing was held on November 3, 2010. In a decision issued February 15, 2011, the ALJ determined that Propst is capable of performing jobs that exist in significant numbers in the national economy and is therefore not disabled.

The Commissioner uses a five-step process to evaluate whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). If a claimant is found not to be disabled at any step prior to the final step, the evaluation is to stop. Id. At step one of the sequential evaluation, the ALJ determines whether the claimant has engaged in "substantial gainful activity" since the alleged disability onset date.[2] Propst worked from 2004 to 2008, as well as during the first few months of 2010, until her position was discontinued. Her income earned in 2008 from her employment with H&R Block was $20,091.09, R. 22, well above the level of substantial gainful activity (which in 2008 was $940 per month or more in gross earnings). See 20 C.F.R. § 404.1574(b)(2); Substantial Gainful Activity, The Official Website of the U.S. Social Security Administration

---

[2] "Substantial work activity" is "work activity that involves doing significant physical or mental activities," and "gainful work activity" is work that is usually done for pay or profit, whether or not such profit is realized. 20 C.F.R. § 404.1572(b). A presumption arises that a claimant is able to engage in substantial gainful activity where her earnings exceed a specific level set out under 20 C.F.R. § 404.1574(b)(2). However, "[t]his presumption of substantial gainful activity is not to be rigidly applied, and it may be rebutted." Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir. 1991).

(September 10, 2013, 2:55 PM), http://www.ssa.gov/OACT/cola/sga.html. The ALJ noted Propst's significant 2008 earnings, as well as the state agency's recommendation that she amend her onset date to June 2008 so that the work later in 2008 might constitute an unsuccessful work attempt under 20 C.F.R. § 404.1574(c). R. 22. Nevertheless, the ALJ gave Propst "the maximum benefit [of the doubt]" and determined she had not engaged in substantial gainful activity since her alleged onset date in December of 2003. R. 22-23.

At step two, the ALJ determined that Propst's degenerative disc disease and affective disorder were severe impairments either singly or in combination.[3] R. 23. Considering these impairments, the ALJ found that Propst retained the residual functional capacity (RFC) to perform less than a full range of light work, specifically finding that Propst is limited in her ability to sustain attention and concentration or to work in coordination with others without being distracted, and can never climb ladders, ropes, or scaffolds, or be exposed to hazards. From a mental standpoint, the ALJ found that Propst can tolerate interaction with coworkers and supervisors as needed for task completion, but can handle work involving only short and simple instructions and minimal contact with the public. R. 32. Based on this RFC, the ALJ determined at step four of the sequential evaluation process, see 20 C.F.R. § 404.1520(a)(4), that Propst could not perform her previous work as a data control operator, office manager/secretary, or tax preparer.[4] Nonetheless, the ALJ determined at step five of the sequential evaluation process that there are other jobs that exist in significant numbers in the national economy that Propst can

---

[3] A severe impairment is any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c). Disabling impairments must either result in death or last or be expected to last for a continuous period of at least twelve months. See 20 C.F.R. § 404.1509; SSR 82-52.

[4] Propst's previous job as a data control operator is classified as skilled and light work as generally performed, but sedentary as she performed it. Her job as an office manager/secretary is also generally classified as skilled and light work, but heavy as she performed it. Her previous job as a tax preparer is classified as semi-skilled and sedentary both generally and as she performed it. See R. 32.

3

perform, such as appointment clerk, file clerk, and office helper, all of which are classified as light work within the bounds of her determined limitations. Thus, the ALJ concluded that Propst is not disabled under the Social Security Act. The Appeals Council denied Propst's request for review and this appeal followed.

## II.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is not the province of a federal court to make administrative disability decisions. The court's job is to determine whether substantial evidence supports the Commissioner's disability decision. To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

# III.

Propst argues that the ALJ erred by: (1) not considering her arm injury a severe impairment at step two; (2) giving insufficient weight to the opinions of her treating physicians; and (3) finding that she was capable of performing light work. (Pl.'s Mem. in Supp. of Summ. J., Dkt. # 15, at 11-19.) The court rejects each of these arguments, for the reasons set forth below.

## A.

In his Report and Recommendation, the magistrate judge agreed with Propst's argument that the ALJ erred by not considering her arm injury a severe impairment at step two. The magistrate judge held:

> [W]hile a part of plaintiff's radiating pain in her shoulder and upper extremities is likely a result of her degenerative disc disease, plaintiff also has independent arm and shoulder impairments for which she has received surgery on several occasions. From the time of her fall in December 2003 through 2005, a large portion of plaintiff's complaints concerned pain and limitations in her use of her elbow and shoulder, requiring such surgery as an open reduction internal fixation in December 2003 and right ulnar nerve anterior submuscular transposition in July 2005. From 2006, there is imaging evidence of a tendon tear, tendinopathy, and mild degenerative changes in her elbow with an olecranon and coronoid osteophyte and a possible hairline radial head fracture, for which plaintiff's treatment providers performed right shoulder arthroscopy, subacromial decompression, and distal clavicle excision sometime around September 2006 and surgery on her elbow in September 2008. While plaintiff's condition often improved following therapy and surgery, the undersigned is hard pressed to imagine that her impairments did not cause her more than minimal functional limitations. 20 C.F.R. § 416.924; SSR 96-3p (July 2, 1996). Moreover, there is good evidence that these fall related injuries and impairments lasted for a continuous period of twelve months duration or greater. 20 C.F.R. § 404.1509. It is the undersigned's view that the [ALJ]'s severity determination at Step 2 of the sequential analysis is not supported by substantial evidence.

Report & Recommendation, Dkt. # 20, at 12.

This conclusion by the magistrate judge disregards the appropriate standard of review in social security cases and constitutes an impermissible reweighing of the substantive disability

evidence. Viewed under the correct standard of review, the court is compelled to conclude that substantial evidence supports the ALJ's finding that Propst's arm impairment was not severe, as well as his consideration of her arm and shoulder pain as primarily symptomatic of her degenerative disc disease.

The ALJ's treatment of Propst's arm pain as an aspect of her degenerative disc disease is consistent with the way that all of her treating physicians approached her arm impairment. Dr. Christopher John, her treating physician at Roanoke Orthopaedic Clinic, noted in January of 2006 that he thought her "elbow symptomatology ha[d] actually improved" and that "most of her pain she is having is neurogenic-type pain." R. 488. She underwent cervical spine surgery on February 9, 2006. On March 20, 2006, Dr. John noted that, following her surgery, Propst's radiating pain from her shoulder into her fingers was gone, that she had "great motion" in her right elbow despite subjective reports of pain. R. 483. Dr. John further noted that although there was "[s]ome concern of a hairline fracture of the radial head[,] I never really saw any evidence of this." R. 483-84. On June 11, 2009, Dr. J. Michael Syptak diagnosed Propst with bipolar disorder, neck pain, back pain, and arthritis. When describing Propst's symptoms, he described neck pain, back pain, migraine headaches, and fatigue. Dr. Syptak did not separate Propst's arm pain from her neck and back problems. R. 712. While he did find her "incapable of even low stress jobs," and suggested a lifting restriction of ten pounds or less, he attributed his finding of disability and according limitations to the diagnoses and symptoms listed. R. 713-14.

There is also substantial evidence that, insofar as Propst's arm and shoulder impairments may have posed significant limitations on her physical ability to do basic work activities, such limitations never persisted for twelve months. For instance, in May of 2005, two months after a March 2005 MRI showed a possible rotator cuff tear in her right shoulder (noted by the

6

magistrate judge), Dr. John nevertheless noted that Propst had "excellent rotator cuff strength" and that her load and shift testing was normal. R. 496. Propst continued to have pain due to ulnar nerve problems in her right arm, but these problems did not interfere with her strength, range of motion, or ability to lift, and were alleviated by her July 2005 right ulnar nerve anterior submuscular transposition surgery. Within six weeks of that surgery, all the numbness and tingling she had previously experienced in her arm was completely gone and she had almost all of her motion back. R. 491. Twelve weeks out of that surgery, while she did have continuing complaints of pain in her right trapezial area, Dr. John noted that "I think a lot of the pain she has in her neck and trapezial area could be referred from the C-spine," R. 490, further supporting the ALJ's treatment of her shoulder pain as conjunctive with her degenerative disc disease. By July of 2006, Propst had a full elbow range of motion, R. 546, and an EMG and nerve conduction study performed on her right arm the next month was unremarkable. R. 545. The following month, in September of 2006, she underwent a right shoulder arthroscopy. Three months later, Dr. John noted that she essentially retained full range of motion of her right elbow. With regard to Propst's shoulder Dr. John remarked that he did "not feel she needs any more formal therapy from a shoulder standpoint, and I question whether she is compliant with a home exercise program anyway." R. 482. In May of 2007, Propst reported that while lifting caused a bit of added pain, the pain had been somewhat alleviated by her neck surgery. On exam, she continued to have full extension of her right elbow. R. 481. In September of 2008, she continued to have issues with right arm pain and Dr. John stated that "[a]t this point, I think that I have done all that I can do" and recommended she rely on pain management for her symptoms. Notably, her pain was diagnosed as right arm neuralgia related to her cervical spine problems. R. 471.

From April 2008 to May 2009, Propst received trigger point injections at Blue Ridge Pain Centers from Dr. John Sherry for severe chronic headache, neck, and bilateral shoulder pain. These injections almost always provided at least 70% relief for at least three days, R. 705, 701, 693-4, 692, 687, 683, 679, and often gave her 80-90% relief. R. 675, 692, 709. As of May 2009, when Propst received her last trigger point injection and filed for disability, Dr. Sherry noted that her chronic pain symptoms were acceptably managed and her functionality was maintained. R. 675.

Propst also received Botox injections from Dr. Glenn Deputy for "unremitting bilateral shoulder pain and cervical dystonia with intractable neck pain as well as intractable headache" from January 2006 until July 2010. These injections also brought significant relief of her neck and shoulder pain. In September 2008, Propst reported that "at times she obtains nearly 100% relief after the injections." R. 567. In September 2009, she reported obtaining 95% relief. R. 1088. In May 2006, Dr. Deputy filled out a neurological evaluation for her first application for disability benefits, in which he found that her strength in the upper extremities was 5/5 with the exception of 4+/5 weakness in the right biceps. R. 660. Three months later, in August 2006, he noted that the results of her upper extremity electrical testing were unremarkable in regards to her right upper extremity. R. 659.

Considering the entirety of the record under the appropriate standard of review, it is plain that there is substantial evidence to support the ALJ's finding that Propst's right arm and shoulder impairments were not severe, as well as the finding that any limitations these impairments posed did not last for twelve months or longer.

**B.**

Propst next takes issue with the ALJ's consideration of disability assessments submitted by her two primary treating physicians, Drs. John Sherry and Michael Syptak. However, the ALJ directly addressed the supporting medical evidence of her treating physicians and gave reasons why he decided not to accord that evidence the same weight as other medical evidence. Generally, a treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."). However, "[t]he treating physician rule is not absolute. An 'ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.'" Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam)). In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ did not ignore Dr. Sherry or Dr. Syptak's supporting medical documentation, as Propst contends. Rather, he addressed their opinions as follows:

> As for the opinion evidence, the undersigned notes that Michael Syptak, M.D., in June 2009, and John Sherry, M.D., undated, submitted assessments endorsing that

9

> the claimant could sit no more than 2 hours total; stand/walk no more than 2 hours total; and lift no more than 10 pounds. The undersigned cannot discern the basis for such extreme limitations in the evidence of record. Post-hearing, the claimant's representative submitted a report from Barry Hensley, Ed.D., dated November 16, 2010, which states that the claimant is not a viable candidate for employment *currently*. First, Dr. Hensley appears to rely on the claimant's recitation of her complaints as the basis for his opinion. Second, even observing that this opinion does not support the claimant's allegation of total debility since December 2003, it addresses employability, an issue reserved to the Commissioner. The undersigned notes that the psychologist also references only partial use of the right arm, which does not appear to be corroborated elsewhere of record. The claimant testified that she had some right arm weakness, but could write for one-half hour at a time. Interestingly, Dr. Syptak, in June 2009, endorsed significant limitations with reaching, handling, or fingering, among his other limitations. However, he apparently endorsed such limitations for both hands, as he drew no distinction between the left and right hand. Further, neither he nor Dr. Sherry suggested any diagnosis relevant to the right arm in particular. Lastly, the undersigned notes that the Virginia Department of Rehabilitation gave the claimant a "most significantly disabled" rating. The undersigned does not find such rating to be persuasive as it relates to the claimant's residual functional capacity for purposes of the Social Security disability program. The undersigned finds that the evidence of record as a whole, including the findings and observations of treating sources, debates these summary conclusions.

R. 31 (citations omitted).

Plainly, the ALJ gave extensive reasons for why he chose not to accord controlling weight to the disability assessment forms filled out by Drs. Sherry and Syptak, which contained no more than "summary conclusions." Notably, while both Drs. Sherry and Syptak asserted that Propst had significant limitations with reaching, handling, and fingering, neither one elaborated on what those limitations were in the space provided for them to do so. R. 715, 721. The ALJ further found that Dr. Hensley's opinion was founded on Propst's subjective complaints, and that "careful consideration of the evidence" led him to the conclusion that "the claimant's subjective allegations . . . concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity

10

assessment." R. 30. As such, the ALJ's decision in this regard is supported by substantial evidence.

## C.

Finally, substantial evidence supports the ALJ's RFC determination. The record reflects that the ALJ had a sound basis to question plaintiff's credibility and thus to have reservations concerning any medical opinions informed primarily by her subjective complaints. Propst applied for and received unemployment benefits in the third and fourth quarters of 2009 and in the first quarter of 2010, despite having applied for SSI and DIB in May of 2009. R. 20. It is true, as the ALJ noted, that receipt of unemployment benefits is not dispositive as to the question of whether a claimant is disabled. R. 30; see also Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965) ("[R]eceipt of unemployment compensation does not in itself prove ability to work"). Nevertheless, there is an inherent inconsistency between receiving unemployment and applying for disability benefits; this inconsistency is sufficient to support a finding that a claimant is not fully credible. Shrewsbury v. Astrue, 7:11cv229, 2012 WL 2789719 at *3 (W.D. Va. July 9, 2012) ("[A]t the very time [the claimant] asserted that she could not work because of her claimed physical and mental impairments, she declared that she was 'ready, willing and able' to work just so she could receive unemployment benefits. These irreconcilable claims, standing alone, provide substantial evidence to support the ALJ's finding that [the claimant] was only partially credible."). Here, the ALJ expressly found that Propst's receipt of unemployment benefits (along with her work activity discussed above) "pose some inconsistency with her contentions of more limited activities, as well as her broader contention of total disability since December 2003." R. 30. Furthermore, the ALJ found that the evidence that Propst could prepare her own meals, do light housework and laundry, and go grocery shopping, coupled with her own

11

statement that she "waited on her boyfriend 'hand and foot,'" when taken together, "fails to substantiate that her limitations are of the degree and intensity alleged; or that they are of a nature to preclude her from performing work activities at the modified light exertional level." R. 31.

The ALJ took into account the limitations on Propst's ability to work that are documented in and supported by the record and resolved the contradictions therein in a reasonable manner. He carefully evaluated the record in according weight to the many varying medical opinions as well as Propst's subjective allegations with which he was presented, and he gave fair consideration to each of those differing accounts and evaluations by posing four different representative hypotheticals to the vocational expert at the administrative hearing in determining Propst's residual functional capacity at step four. R. 51-53. Substantial evidence supports his conclusions regarding which of Propst's alleged limitations were credibly supported by the record, and those conclusions formed the basis of his determination that Propst could perform work that existed in significant numbers in the national economy and is therefore not disabled.

**IV.**

In sum, the court cannot agree with the magistrate judge's finding that the ALJ's step 2 analysis and RFC determination are not supported by substantial evidence. To that end, an Order will be entered rejecting the Report and Recommendation of the magistrate judge in its entirety, and affirming the Commissioner's decision.

Entered: September 23, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge